## Gatliff Coal Company v. Ramseur's Administratrix.

(Decided March 15, 1921.)

### Appeal from Whitley Circuit Court.

Master and Servant—Mines—Death—Negligence—Question for Jury.—In an action by the administratrix of a miner to recover damages for his death, alleged to have been caused by the breathing of noxious gases which the defendant had negligently permit-

ted to accumulate in its mine, evidence examined and held sufficient to take the case to the jury and sustain a finding in favor of plaintiff.

TYE & SILER for appellant.

HENRY C. GILLIS and H. W. BOND for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Charging that the death of William Ramseur, an employee of the Gatliff Coal Company, was caused by poisonous and noxious gases which the company had negligently permitted to accumulate and remain in its mine, his administratrix, Laura Ramseur, sued the company to recover damages. From a judgment in her favor for $4,000.00, the company appeals.

It is first insisted that the coal company was entitled to a peremptory instruction because the evidence did not show that the breathing of poisonous or noxious gases was the direct and proximate cause of Ramseur's death. The testimony was as follows: Both carbon dioxide and carbon monoxide were present at the place of the accident because of the company's failure to provide proper ventilation. Ramseur was well and strong on the day that he went to work. When found some two or three hours later, he was struggling for breath, and had the appearance of being smothered. He was trembling and helpless, and had to be carried out. When carried home, he was short of breath and would rear back to get his breath. When he reached home the doctor got straddle of him, pumped his arms up and down, and pressed on his chest. Ramseur suffered from headache and tried to throw up. His limbs quivered, his breath kept getting shorter and shorter, and he continued to grow weaker and weaker until he died. Though the experts who testified on the question stated that they had never known of a man dying from bad air, they were of the opinion that bad air could produce death, and one of them stated that he knew of a death caused by breathing carbon dioxide in a well. The company's physician filed an affidavit which was admitted by agreement, stating that Ramseur had the following symptoms: "Eyes injected, vomiting of mucus streaked with blood, breathing labored and slow, heart's action slow but regular, unable to speak above a whisper, in a comatose condition." He further stated that he did not believe it was

possible for any physician to say what the trouble was without doing an autopsy. Here, then, we have a case where noxious gases were present. Ramseur was strong and well when he entered the mine. When found he had all the symptoms of gas poison. The symptoms manifested themselves up until the time of his death. No other cause for his death was shown. Though there was no direct testimony on the question, it seems to us that the foregoing circumstances were sufficient to authorize the submission of the question to the jury, and to sustain its finding that Ramseur's death was caused by the inhalation of noxious gases.

The criticisms of the instructions are more technical than substantial, and we do not regard them as of sufficient importance to merit discussion.

Judgment affirmed.